IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAARON SHEARS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:24-cv-00165** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **J. LYTLE, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

This is a prisoner civil rights case in which pro se Plaintiff Daaron Shears ("Shears") alleges that Defendants violated his civil rights by assaulting him. Presently before the Court is Defendants' motion for summary judgment and several motions related to discovery, mediation, and the identity of the Defendant identified as John Doe in the complaint. For the following reasons, the Court will grant the motion for summary judgment, grant the motion to identify the John Doe Defendant, deny the other motions, and close this case.

## I. BACKGROUND AND PROCEDURAL HISTORY

Shears, who has been incarcerated in Rockview State Correctional Institution ("SCI-Rockview") at all relevant times, initiated this case through the filing of a complaint pursuant to 42 U.S.C. § 1983 on January 22, 2024, which the Court received and docketed on January 29, 2024. (Doc. No. 1.) According to the allegations in the complaint, which remains Shears's operative pleading, Defendants Stabley, Lytle, and Vaux[1] entered Shears's housing unit between 10:00 and 10:30 a.m. on January 8, 2024. (Id. ¶ 1.) Stabley, a lieutenant, allegedly ordered Lytle to strip search Shears. (Id. ¶ 2.) After Lytle completed the strip search, he handcuffed Shears

[1] Vaux is identified in the complaint as a John Doe Defendant but has subsequently been identified as Defendant Vaux. Although he has not been served with process, for ease of reference the Court will refer to this Defendant as "Vaux" for the remainder of this Memorandum except where discussing the pending motions related to his identity.

and escorted him out of his cell so that Shears could be transported to a medical appointment for an x-ray. (Id. ¶¶ 3–4.)

While they were walking into the x-ray room, Lytle purportedly asked Shears, "do you remember all the paperwork you filed against me?" (Id. ¶ 4.) After Shears confirmed that he remembered filing the paperwork, Lytle allegedly grabbed Shears and stated, "your gonna pay for that Jewish n*****." (Id.) Lytle then purportedly slammed Shears into the x-ray machine and then pushed him to the floor. (Id. ¶ 5.) While Shears was lying on the floor, Lytle allegedly got on top of him and punched him more than ten times in his ribs. (Id. ¶ 6.) Vaux then purportedly held Shears by the ankles while Lytle choked him until he passed out. (Id. ¶ 7.) When Shears regained consciousness, Lytle allegedly smacked him and said, "get up n***** boo." (Id. ¶ 8.) Stabley, who was standing by the door during the alleged assault, purportedly told Lytle and Vaux, "hurry, hurry guys get him up lieutenant Wasson is coming." (Id. ¶ 9.) Lytle and Vaux pulled Shears to his feet. (Id. ¶ 10.) Shears repeatedly requested medical attention after the alleged assault, but his requests were denied. (Id.) The officers then escorted Shears back to his cell, at which point Lytle purportedly told Shears, "n***** if you report me I will kill you." (Id. ¶ 11.)

The complaint asserts claims for cruel and unusual punishment in violation of the Eighth Amendment, retaliation in violation of the First Amendment, and deliberate indifference to a serious medical need in violation of the Eighth Amendment against Stabley, Lytle, and Vaux. Shears seeks damages, declaratory relief, and injunctive relief. Defendants answered the complaint on April 25, 2024. (Doc. No. 13.)

On July 12, 2024, Shears filed a motion to compel discovery, requesting production of medical records, photos that were taken of him following the alleged assault, records of what

pain medications he was prescribed during the relevant period, documents related to the prison's internal investigation, surveillance footage, and the identity of the defendant named as a John Doe defendant in his complaint. (Doc. No. 15.) Defendants opposed the motion, arguing, inter alia, that the motion was moot because Defendants had already responded to Shears's discovery request and produced documents in response to his requests. (Doc. No. 17.)

On July 29, 2024, Shears filed a motion to refer the case to mediation. (Doc. No. 19.) He then filed a second motion to compel discovery on August 12, 2024, wherein he acknowledged that he had received responses to all of his discovery requests except his request for the identity of the John Doe defendant and requested that the Court compel Defendants to produce that information. (Doc. No. 20.) Defendants opposed the second motion to compel discovery, noting that they had objected to providing the identity of the John Doe Defendant because doing so in response to Shears's discovery request would amount to an admission that Defendants had physically beaten Shears because of the wording of his request. (Doc. No. 22.)

Shears filed another motion to refer the case to mediation on August 23, 2022. (Doc. No. 23.) He then filed a motion for sanctions on September 3, 2024, seeking sanctions against Defendant's counsel for continually failing to provide him the identity of the John Doe defendant. (Doc. No. 24.)

Defendants filed the instant motion for summary judgment on December 31, 2024, along with a supporting brief and a statement of material facts as required by Local Rule 56.1. (Doc. Nos. 30–32.) Shears responded to the motion on February 4, 2025, and Defendants filed a reply brief in support of the motion on February 18, 2025. (Doc. Nos. 40–42.) While the motion for summary judgment was being briefed, Shears filed a third motion to refer the case to mediation on January 14, 2025. (Doc. No. 33.) He then filed a motion to identify the John Doe defendant

as Defendant Vaux, noting that that information had been provided to him by the other Defendants. (Doc. No. 36.) The motion for summary judgment, motions to compel discovery, motion for sanctions, motions for referral to mediation, and motion to identify the defendant are ripe for judicial review.

## II. MATERIAL FACTS[2]

Under the Pennsylvania Department of Corrections' grievance policy, DC-ADM 804, a prisoner seeking to exhaust administrative remedies for a complaint regarding his prison conditions must first submit a written grievance within fifteen (15) working days from the date of the incident. See (DC-ADM 804 § 1(A)(8), Doc. No. 32-2 at 6). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law." See (id. § 1(A)(11), Doc. No. 32-2 at 6).

If the inmate's grievance includes an allegation of abuse, it must be investigated according to the terms of a different policy, DC-ADM 001. See (id. § 1(D)(2), Doc. No. 32-2 at 12; DC-ADM 001, Doc. No. 32-4). The prison must provide an initial review response to the grievance after it has completed the investigation required by DC-ADM 001. See (DC-ADM 804 § 1(D)(5), Doc. No. 32-2 at 13). Referral of a matter for investigation under the terms of

---

[2] Unless otherwise noted, the background herein is derived from Defndants' Rule 56.1 statement of facts and Shears's response to the statement. (Doc. Nos. 32, 41.) Shears's response does not respond to several factual assertions in Defendants' statement. See (Doc. No. 41.) Where Shears has failed to respond to an assertion, the Court deems the fact admitted in accordance with Local Rule 56.1 and will cite only the Defendants' statement in support of the fact. See M.D. Pa. 56.1. Additionally, because the Court ultimately grants summary judgment on the basis of Shears's failure to exhaust administrative remedies, this section focuses only on facts pertaining to that issue.

DC-ADM 001 does not alter or eliminate the inmate's ability to appeal his grievance through further stages of administrative review once the initial review response is received. See (DC-ADM 804 § 1(D)(3), Doc. No. 32-2 at 13). Thus, once the inmate has received an initial review response following the DC-ADM 001 investigation, he must submit a written appeal to an intermediate review level within fifteen (15) working days. See (id. § 2(A)(1)(a), Doc. No. 32-2 at 16). Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals within fifteen (15) working days. See (id. § 2(B)(1)(b), Doc. No. 32-2 at 19).

Shears filed a grievance asserting the claims at issue in this lawsuit on January 8, 2024. (Doc. No. 32 ¶ 14; Doc. No. 41 ¶ 10.) Because the grievance alleged abuse, it was referred for an investigation pursuant to DC-ADM 001. (Doc. No. 32 ¶¶ 16–17; Doc. No. 41 ¶¶ 12–13.) While the investigation was pending, Shears filed the instant case in this district on January 22, 2024. (Doc. No. 1.) The DC-ADM 001 investigation was completed on February 26, 2024. (Doc. No. 32 ¶ 19.) An initial review response denying Shears's grievance was issued on April 17, 2024. (Id. ¶ 20.) The parties dispute whether Shears appealed the initial review response—defendants assert that he did not, while Shears asserts that he attempted to file an appeal but that prison officials did not respond. (Id. ¶¶ 21–22; Doc. No. 41 ¶ 14.)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

A disputed fact is "material" if proof of its existence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). A dispute of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine dispute of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine dispute of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine dispute. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether a dispute of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id.

A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-cv-01384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-cv-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## IV. DISCUSSION

At the outset, the Court will grant Shears's motion to identify the John Doe Defendant identified in the complaint as Defendant Vaux because Defendants appear to concede the fact that this is the proper identity for this Defendant. See (Doc. No. 36; Doc. No. 42 at 2 n.1). The Court will also deny as moot Shears's motions to compel discovery because, based on the parties' filings, it appears that Defendants have now produced to Shears all the documents he

requested. See (Doc. Nos. 15–17, 20–22, 24–26, 36). Moreover, none of the discovery requested in the motions to compel discovery is relevant to whether Shears exhausted administrative remedies, and, as discussed below, the Court ultimately finds that summary judgment in Defendants' favor is warranted on that issue.

The Court will deny Shears's motion for sanctions because the motion seeks sanctions for Defendants' failure to produce documents in discovery, but the Court never issued an Order compelling production of the requested documents. See McMullen Bay Ship Mgmt., 335 F.3d 215, 217 (3d Cir. 2003) (noting that Federal Rule of Civil Procedure 37 generally "requires the issuance of an order to compel and only after failure to comply with that order should a penalty be imposed").

As a final preliminary matter, the Court will deny Plaintiff's motions to refer this case to mediation. Defendants have not indicated a willingness to participate in mediation in response to any of Plaintiff's motions and it does not appear to the Court that referral to mediation would be beneficial if only one side is interested in pursuing mediation.

Turning to the motion for summary judgment, Defendants argue that they are entitled to summary judgment because Shears failed to exhaust administrative remedies and because his claims fail on their merits. (Doc. No. 31.) The Court begins its analysis with the exhaustion argument, and because the Court ultimately concludes that Defendants are entitled to summary judgment on the basis of Plaintiff's failure to exhaust, it does not reach their merits argument.

Under the Prison Litigation Reform Act ("PLRA"), prisoner plaintiffs must exhaust all available administrative remedies before they may challenge the conditions of their confinement in federal court. See 42 U.S.C. § 1997e(a); Downey v. Pa. Dep't of Corr., 968 F.3d 299, 304 (3d Cir. 2020). The statute requires "proper exhaustion," meaning the prisoner must complete the

administrative review process in accordance with the procedural rules set by the prison. See id. at 305 (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)). The failure to exhaust available administrative remedies is an affirmative defense. See Jones v. Bock, 549 U.S. 199, 216 (2007). Accordingly, "the burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant." See Rinaldi v. United States, 904 F.3d 257, 268 (2018) (citing Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002)).

In the Pennsylvania DOC, the exclusive procedure for exhausting administrative remedies on a grievance is provided by DC-ADM 804. See (DC-ADM 804, Doc. No. 32-2); Prater v. Dep't of Corrs., 76 F.4th 184, 203 (3d Cir. 2023). Although lower courts often previously treated DC-ADM 001 as providing an alternative means of exhausting administrative remedies, the United States Court of Appeals for the Third Circuit foreclosed such a theory of exhaustion in Prater. See Prater, 76 F.4th at 203. In Prater, the Third Circuit noted that the "interrelatedness" of DC-ADM 804 and DC-ADM 001 "does not suggest the two are interchangeable. ADM 804's cross reference to ADM 001 reveals that the two policies work in tandem, not in place of one another." See id. Thus, once an investigation is completed pursuant to DC-ADM 001, the inmate must still exhaust his administrative remedies using the appeal processes outlined in DC-ADM 804. See Prater, 76 F.4th at 203–04; (DC-ADM 804 § 2(A)(1)(a), Doc. No. 32-2 at 16).

A prisoner is only required to exhaust administrative remedies that are "available." See Rinaldi, 904 F.3d at 266 (citing Woodford, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking,

incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" See id. at 266–67 (quoting Ross v. Blake, 578 U.S. 632, 643–44 (2016)). If a defendant establishes that the plaintiff failed to exhaust administrative remedies, the burden shifts to the plaintiff to show that the administrative process was unavailable to him. See id. at 268.

In this case, the undisputed facts of record indicate that Shears failed to exhaust administrative remedies. Following the investigation of his abuse claim completed pursuant to DC-ADM 001, his grievance was denied in an initial review response on April 17, 2024, and he subsequently failed to appeal the grievance through all stages of administrative review as required by DC-ADM 804. See (Doc. No. 32 ¶¶ 19–22; Doc. No. 41 ¶ 14); see also Prater, 76 F.4th at 203–04 (noting that DC-ADM 804 is the exclusive means of exhausting a grievance in the DOC and that an inmate must complete DC-ADM 804 process after a DC-ADM 001 investigation is complete).

Shears advances three arguments to the contrary, none of which are persuasive. His first argument is that the grievance process was rendered unavailable because he attempted to appeal his grievance, but prison officials failed to respond. (Doc. No. 40-2 at 11.) This argument is unavailing, however, because the appeal that Shears purportedly attempted to file is dated April 18, 2024, see (Doc. No. 40-3), which is approximately three months after he filed this case on January 22, 2024, see (Doc. No. 1). Under the PLRA, exhaustion of administrative remedies must be completed before the plaintiff files suit; he may not complete the administrative exhaustion process after he has already filed suit. See Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002).

Shears's second argument is that exhaustion should be excused because Defendant Lytle allegedly threatened to kill him if he told anyone about the Defendants' alleged assault. (Doc. No. 40-2 at 8.) Even viewing the facts in the light most favorable to Shears and assuming that this threat actually occurred, however, it is not sufficient to deem administrative remedies unavailable in the instant case. In order for an administrative remedy to be deemed unavailable based on threats by prison officials, the plaintiff must show that he was actually deterred from filing the grievance at issue. See Rinaldi, 904 F.3d at 268. Here, the record shows that Shears filed a grievance against Lytle and the other Defendants on January 8, 2024, see (Doc. No. 32 ¶ 14; Doc. No. 41 ¶ 10), and—according to Shears's own account—that he attempted to file an appeal of the grievance on April 18, 2024, see (Doc. No. 41 ¶ 14). Thus, there is no basis in the record to conclude that any threats by Lytle actually deterred Shears from exhausting administrative remedies.

Shears's third and final argument is that he exhausted administrative remedies because his grievance was referred for an investigation pursuant to DC-ADM 001 and no further actions were required to exhaust administrative remedies. (Doc. No. 41 at 4.)[3] The Court liberally construes this as an argument that the procedures of DC-ADM 001 present an alternative means of exhausting administrative remedies that do not require the inmate to file appeals as he would under DC-ADM 804. This argument is foreclosed by the Third Circuit's decision in Prater, which holds that DC-ADM 804 is the exclusive means for exhausting a grievance and that an inmate whose grievance has been referred for investigation under DC-ADM 001 must complete DC-ADM 804's appeals process after the investigation is complete. See Prater, 76 F.4th at 203–

[3] This argument is asserted in Shears's statement of material facts rather than his opposition brief. The Court treats it as a properly asserted argument in order to give a liberal construction to his filing as a pro se litigant.

04. The Court will accordingly grant summary judgment in favor of Defendants because there is no dispute of material fact and the record shows that Shears failed to exhaust administrative remedies prior to filing this case.[4]

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment and close this case. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

[4] Although Vaux has not been served with process and accordingly has not moved for summary judgment, the Court agrees with Defendants, see (Doc. No. 42 at 2 n.1), that summary judgment in favor of Vaux is warranted for the same reason the other Defendants are entitled to summary judgment.